Judge BAKER
(dissenting):
I respectfully dissent for the following reasons.

Multiplication of Charges

Like Judge Erdmann, I would decide this case on the ground that Appellant was subjected to an unreasonable multiplication of charges. Appellant stole 16 checks from Sandoval (“Little Joe Sandoval”) and forged Sandoval’s name as the drawer on all 16 checks. He made himself the payee on 12 of the checks and made his estranged wife the payee on four of the checks. On those checks that designated his wife as the payee, Appellant signed his wife’s name on the back of the checks and then cashed the checks. Appellant’s wife was not aware of his fraudulent acts.
The only thing creative about this case was the Government’s charging scheme. With respect to the four checks for which Appellant made his wife the payee and forged her signature as the indorser, the Government charged Appellant with “double forgery,” forgeries for the front of the checks and separate forgeries for the back of the checks. As *98 a result, Appellant was potentially exposed to an additional 20 years of confinement for a total of 115 years of confinement. I believe 95 years exposure addressed Appellant’s wrongdoing in stealing and forging 16 checks in the amount of $5,075. Although the military judge considered the four “double forgeries” multiplicious for sentencing purposes, the Government’s charging scheme nonetheless exaggerated the criminality at issue.

Double Forgery

My view on the unreasonable multiplication of charges is reinforced by my skepticism that this is the case on which to substantiate a theory of “double forgery.” I am not persuaded Appellant committed a separate offense under the Uniform Code of Military Justice when he signed his wife’s name as the indorser on four checks upon which he had already forged the drawer’s signature.
The elements of forgery under Article 123, UCMJ, 10 U.S.C. § 923 (1994) are:
(a) that the accused falsely made or altered a certain signature or writing;
(b) that the signature or writing was of a nature which would, if genuine, apparently impose a legal liability on another or change another’s legal rights or liabilities to that person’s prejudice; and
(c) that the false making or altering was with the intent to defraud.
The majority has premised its conclusion on the notion that Mrs. Pauling incurred an apparent legal liability because “under the law of the jurisdiction where the checks were negotiated, the indorser is obligated to pay a check’s face amount in the event of dishon- or.” 60 M.J. at 95. Further, according to the majority, “[t]he risk that such an obligation will arise is particularly high where a check bears a forged drafter’s signature, thus providing a basis for its dishonor.” Id. at 95. However, I am not convinced the Colorado Commercial Code considers the forged signatoe of Mrs. Pauling an indorsement for liability purposes. Secondly, I am not convinced she would have incurred an apparent legal liability if her indorsement on these checks were genuine and she was not complicit in the forgery scheme. We must keep in mind that if the wife’s signature were genuine, it would still be a genuine signature on a stolen and forged instrument.
A. Mrs. Pauling’s forged signature
As the lead opinion notes, the Colorado Commercial Code states “... if an instrument is dishonored, an indorser is obliged to pay the amount due on the instrument ... according to the terms of the instrument at the time it was indorsed.” C.R.S. § 4-3-415. However, this provision must be read in light of the Colorado Code’s treatment of unauthorized signatures. Under the Colorado Code, an indorsement means “a signature, other than that of the signer, drawer, or acceptor, that ... is made on an instrument for the purpose of (i) negotiating the instrument, (ii) restricting payment of the instrument, or (iii) incurring indorser’s liability on the instrument.” C.R.S. § 4-3-204. Under the section entitled “Signature,” the following is found: “A person is not liable on an instrument unless ... the person signed the instrument.” C.R.S. § 4-3-401. The comment to this section states: “Obligation on an instrument depends on a signature that is binding on the obligor.” And “[signature includes indorsement.” C.R.S. § 4-3-401 Comment. Furthermore, § 4-3—403 states that “[ujnless otherwise provided in this article or article 4 of this title, an unauthorized signature is ineffective except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value.” C.R.S. 4-3-403. An unauthorized signature is defined in 4-1-201 as including a forgery. In essence, a forgery is effective only as the signature of the forger.
In this case, assuming as the majority does, that the reason for dishonor would be discovery of the forgery, Mrs. Pauling would not have been considered an indorser because her signature was unauthorized. Thus, the Colorado Code imposed no liability on her under 4-3-415, apparent or otherwise, in the event of dishonor.
B. If Mrs. Pauling’s Signature Were Genuine
Even if Mrs. Pauling’s signature were genuine, it would not have exposed her to an *99 apparent legal liability or changed her legal rights or liability to her prejudice. See Article 123, UCMJ. Under the Colorado Code and its uniform counterpart, there are several possible scenarios that might arise relevant to Mrs. Pauling’s apparent liability if her indorsement was considered genuine on a check that otherwise contained the forged signature of the drawer.
(1) Assume for the moment that Mrs. Pauling was a good faith holder and genuine indorser of a check with a forged drawer signature. Further, assume she deposited the check in her bank and Sandoval’s bank (drawee bank) subsequently paid the check. Under § 4-3-418 of the Colorado Code, if the drawee bank mistakenly paid the check over the forged signature of the drawer, the drawee bank could possibly seek to recover the amount paid on an equitable theory of unjust enrichment. However, this would only be true as long as the wife had not changed her position in reliance on the payment. C.R.S § 4-3-418(c). Under paragraph 48(c)(4) of the Manual for Courts-Martial regarding apparent legal efficacy, “the writing must appear either on its face or from extrinsic facts to impose a legal liability on another.” So, while in theory the drawee bank could seek a remedy “in equity,” this is certainly not apparent on the face of the writing. It seems clear that in such a case, the Colorado Code affords the drawee bank no remedy “at law” stemming from any legal liability on the part of Mrs. Pauling. Moreover, the record in this case suggests the actual facts are even different from the hypothetical just posed. Here, after signing his wife’s name, Appellant actually cashed the checks and received payment. Therefore, no party could even recover in restitution from Mrs. Pauling because she never received the benefit of the fraudulent payments.
(2) Mrs. Pauling could potentially incur liability if her failure to exercise “ordinary care” “substantially contribute^]” to the making of the forged signature. C.R.S 4-3-106 comment 4; James J. White & Robert S. Summers, Uniform Commercial Code § 16-3(b) (5th ed.2000). Again, it is not apparent on the face of the writings, nor, is there any indication in the record to suggest that Mrs. Pauling knew of, had reason to know of, or was eomplicit in the fraudulent acts of Appellant.
One thing is clear, under the Uniform Commercial Code (UCC) and Colorado law, the relationships and responsibilities of payees, drawers, indorsers and holders, are sufficiently complex that in a case like Mrs. Pauling’s, whatever legal liability might arise with respect to a genuine signature would not be apparent from her genuine indorsement on a forged instrument.
If apparent means “manifest” or “palpable” it is not clear to me that the UCC, as adopted in Colorado state law, guides one to a manifest conclusion regarding the wife’s liability if her signature was assumed genuine. Nor does it “seem” that Mrs. Pauling would be liable—quite the contrary. Therefore, while the wife is clearly a “victim” of her estranged husband’s conduct in a natural law sense, I do not believe it is apparent that she would have incurred any legal liability in this case.* Accordingly, on the basis of an unreasonable multiplication of charges and failure to state an offense on the facts of this ease, I would dismiss the specification that alleges separate forgeries for the four checks bearing the wife’s unauthorized signature.

 This conclusion is fact specific. I am not suggesting a forged indorsement can never serve as the basis for a forgery charge.